The next case on the argument calendar is U.S. v. Buck May I approach? Yes, please. When you're ready, counsel. Thank you. I appreciate the opportunity to be here this afternoon, may it please the Court. My name is Michael Deany and I represent Mr. Buck. Before I begin with my arguments I'd like to take a moment to introduce Mr. Bucks mother, Margaret, as well as members of the Ed Buck defense team, and members of his extended family as well who are present here in court today. I reserve two minutes for rebuttal. When asked during trial if he conducted a broader investigation into Mr. Buck, a main government investigator responded, I received several phone calls from informants who told us that Mr. Buck was in some sort of party and play behavior and sort of fetishes. The answer forces us to recall when government agents would troll parks, public restrooms, and bars looking for gay men to arrest for crimes of indecency and nuisance, and the recent history of the DSM-1 where the definition of sexual deviancy included homosexuality and fetishism. This record demonstrates reversible error. Mr. Buck's constitutional rights were violated. Let me ask you this, counsel, because you're on appeal now and since your time is short, so let me let me get right to what you think is your best issue on appeals. The evidence is pretty compelling in this case, and now that the jury has convicted, every inference goes in the government's favor. So what's your best issue? I understand that, your honor. If we could begin with count seven and turn to this court's determination with regard to U.S. shelter, we're asking for a judgment of acquittal as to the count on the basis of the insufficiency of the evidence, and this gets to the issue of this particular defendant's party and play practice. Now it's our contention that the drug use within this particular defendant's residence was incidental drug use for purposes of consideration of U.S. shelter. If I could explain that, what I mean by that is that even for purposes of the party and play practice which is involved in this situation and discussed throughout the course of the nine-day trial, drug use was not a primary purpose even for the party and play activities which were ongoing in Mr. Buck's apartment. To explain further... Does it have to be for the for the homicide charges? In other words, if let's assume for a moment that the record supports the the evidence supports the conclusion that Mr. Buck gave methamphetamine to several people and that it was the but-for cause of their death. I understand you're making an argument about that, but let's assume that that's true. Does there have to be a party and play allegation also or isn't that enough to support the the homicide? Well, Judge, the issue goes to whether or not there was something other than circumstantial evidence that Mr. Buck distributed. Well, but see, we don't need more than circumstantial evidence on appeal and so I think there's I think there's pretty good evidence whether or not you think it's great evidence that there were deaths caused by Mr. Buck giving methamphetamine to these two people. Does it really matter whether he was maintaining a party and play premises? Well, I think what happens... To support the conviction for those? Well, to support the conviction for those particular elements, Your Honor, I wouldn't I would say probably you're correct, but the problem with regard to the way this case is charged is that the particular evidence, not only with regard to the party and play aspect, but also with regard to the percipient witnesses who are allowed to testify, that evidence is allowed to bleed in with regard to the issues of whether or not Mr. Buck is the person who distributed drugs to these two individuals in the two death counts, Mr. Moore and Mr. Dean. And so without the evidence with regard to the party and play aspect of this, without the evidence with regard to the allegations contained within count number seven, which is the maintaining the drug house allegation, we don't have that bleed-over effect, I believe. But the evidence would still come in. See, what you're saying is the evidence is insufficient to support the party or play allegation. And put that... Let's assume that's true for a second. The evidence is still relevant to support the other charges, is it not? Well... In other words, people can come in and say this is what I saw and this is what I observed and this is what I know, even if the government had never brought count seven. Well, that's... Well, then the issue becomes whether or not the recipient witnesses should have been allowed to testify, especially given the fact that those particular witnesses, the recipient witnesses, are testifying to cumulative evidence that would have been testified to and in fact was testified to during the course of testimony with regard to counts one through six. Those are the distribution counts. And so... Is the fact that the evidence is cumulative mean that it doesn't support the convictions? Well, certainly... Well, certainly not to the issue of supporting the convictions, Judge, but with regard to whether or not it was unfairly prejudicial for the government to be able to bring in these additional cumulative witnesses, especially the recipient witnesses and the videos, were adding in such a way to create undue prejudice with regard to the jury's ability to make a determination fairly with regard to whether or not Mr. Buck actually distributed the methamphetamine to Mr. Moore and to Mr. Dean. Your argument... I guess one way to look at it is just that the district judge's decision to admit evidence under 404B was an abusive discretion. That's correct. And also we would point to the admission of evidence... The district judge determined, though, that you can't admit prior bad act evidence under 404B if it goes to modus operandi, what's going on and not... Certainly, but it's... And she basically said, I mean, the court said that all this other recipient witness is admissible under 404B because it shows his modus operandi and what not. Understood, understood. But why is that an abusive... Why is it... In your view, it's just... It was just too much? Well, certainly it's overkill, and I think that that's exactly the word that I use within the context of my opening brief. It was unnecessary with regard to development of the practice of this particular defendant, which had already been established through testimony brought in in all of the distribution counts, counts one through six. But if it was already established, then why is this harmful? I mean, what you're basically saying is it's overkill because they already proved it. And my difficulty with that is that why would it be reversible error? It's reversible error, Judge, because what is happening here is that what is being created in the jury's mind is what they would believe to be irrebuttable evidence that this particular defendant caused the harm to Timothy Dean and Mr. Moore as a result of this constant piling on of evidence from each of these witnesses and each of the videotapes and all of the other evidence that is brought in with regard to his being an evil person. Gates of Hell is referenced. Witnesses with regard to chainsaws are being referenced. Witnesses with regard to all of these other supposed horrific acts, which are not corroborated by evidence other than statements being made, is left, leaves the jury believing something that they not necessarily would have been believing with regard to this defendant. Absent that information, you wanted to save a little bit of time.  May it please the court Chelsea Norell on behalf of the United States. I'll start with the other acts evidence that the court was just asking opposing counsel about on appeal. Defendant challenges three types of evidence. The videos that were admitted the racial denigration remarks that Mr Buck made to his victims and episodes of violence on the videos. The court did not plainly air in admitting a small sample of the videos and images showing persons not identified in the indictment engaging in party and play at and this is because it was direct evidence of the drug premises charge. It was also admissible to show a ritualistic modus operandi whereby defendant distributed drugs during party and play where he undressed his victims. He directed them to smoke or inject methamphetamine. And there is a reasonable inference that if he has this very specific ritual, he is going to provide the drugs that were integral to that ritual. Some of these videos also showed that the defendant pushed his victims beyond their limits to take more drugs than they could possibly consume. And that was circumstantial evidence that he provided fatal doses to Timothy Dean and Jamel Moore. Additionally, these videos refuted a centerpiece of the defendant's argument, which was that all of the government's witnesses were liars and manipulators. This was essential to show corroboration of each of the victim's accounts who came into court. None of this was unfairly prejudicial or overkill, to use defendant's words. Without objection, the government played 12 short excerpts, each under three minutes, of videos that were just a tiny fraction of the thousands of party and play videos that were found on defendant's computer. I'd like to touch also on the Confrontation Clause question. Before you turn to that, could I ask you some factual questions about the search of the toolbox? And let's assume for purposes of these questions that the deputy is appropriately in the apartment because there was a call to respond to an emergency. You agree that just being there wouldn't allow someone to search a closed container? That's correct, Your Honor. She did not conduct a search, though. She saw them in plain view because the drawers were slightly ajar and it was a Craftman toolbox. Okay, that's what I was hoping for some factual explanation on. So I read her testimony, but tell me what... The notion that she could see something through the cracks in the toolbox troubled me, so help me with what she... Help me what you think she actually saw. And Your Honor, it might be helpful to actually look at a photograph of this toolbox, which is at 2 ER 482. And that shows you that there are cracks between each of the drawers, such that if they were slightly ajar, you would be able to see what is at the front of the drawer. And I couldn't tell from the... Maybe I just missed it. Was there testimony that this photo represented the way the toolbox was when the deputy came in there? She actually testified that the drawers were slightly more closed at the time of the photo than how she saw it, because people were moving through the apartment, knocking into it, addressing the overdose that was occurring in the living room. Okay, I'm sorry. You wanna deal with the confrontation? Yes, Your Honor, unless... Yes, the photo is really... I saw the photo and the photo... The drawers were closed. Yeah, photo really doesn't help me because the photo looks like they're closed. That's true. And they look more closed in that one because it had been knocked around at that point. But you can see, even in that photo, that there are slivers between each of the drawers, such that if they were open a tiny amount, you would be able to see what's at the front of the drawers. Given the vantage point, I can't see anything from the slivers. And I... Going to the credibility finding, as Your Honor pointed out in the last case that was before us, the district court is in the best position to make such credibility findings. And here, she made that finding regarding Deputy Barraza's testimony. She testified consistently across her sworn declaration and in the evidentiary hearing that she saw that. Was there testimony on the record? I don't recall reading that, that the doors were actually open wider at the time that she viewed the evidence. Yes, Your Honor. That was testified to in the suppression hearing, and she also said it in her sworn declaration, which is at 2 ER 476. If there are no other questions about the suppression hearing, I can move to the confrontation clause. Now, first, considering the relevant of the proposed cross, we must look at what the defendant proffered. He wanted to attack Deputy Barraza's account that she saw these drawers partially open. He repeatedly says that at 4 ER 850 through 52, 55 through 56, and 61 through 62. And as Judge Snyder explained, how Deputy Barraza found this evidence was not relevant to the jury because she had already ruled that the evidence was admissible, and the circumstances of the discovery were not probative of the... Were not probative of this evidence. It was also irrelevant to her credibility because defendant couldn't proffer any discrepancy between her sworn testimony and her declaration. The judge even pointed out the defendant had mischaracterized the sequence of events because defendant kept pointing to an inconsistency in two reports. But what actually happened was there was an original incident report written after the 911 response in July of 2017. It was written by a totally different deputy, and it said, we observed narcotics evidence throughout the apartment. When the DA's office wanted clarity a year later, Deputy Barraza wrote her first and only report in this case in which she said that she found that evidence in plain view. That's at 4 ER 854. And she steadfastly said the same in her sworn declaration at 2 ER 476 and in her testimony at the suppression hearing. When a defendant fails to show how a proposed line of questions undermines the officer's narrative, and the questions merely cast doubt on the legality of the search, they have little bearing on the officer's credibility. Again, help me again with what she said about the toolbox. At 2 ER 475, she says the drugs were in plain view in the kitchen, but she doesn't talk about the toolbox. At 476, does she talk about the toolbox? Yes, Your Honor. At 477... I saw the red tool chest. Yes. At 477, I noticed they were slightly open. Yes. Okay. So 476 is not... 476 says she just saw drug evidence in plain view. I apologize, Your Honor. That's the beginning of the declaration. But yes, in her declaration, she lays it out. And there's actually two separate... Right, yeah. I got you now. That's correct. When the questioning only goes to the legality of the search and not the officer's overall credibility, it has little bearing on the officer's credibility as held in the Maston decision. Now, finally, under the Confrontation Clause Analysis, we have to look at whether the jury had sufficient evidence to assess the credibility of the officer. And here, they had plenty of information to assess it. The defendant was free to ask if the photos depicted the evidence as she saw it, the chain of custody, and whether she was directed to search. The limitations on cross examination were not so severe as to implicate the confrontation clause, especially when the defendant cannot point to a single question that he didn't get to ask that would have exposed some pro government bias. Additionally, any error would be harmless because, as Your Honor pointed out, she also saw drug evidence in the kitchen that was not challenged at the suppression hearing, and there was evidence from other victims that he kept drugs in this toolbox. There was also overwhelming evidence that he distributed these drugs to Jamel Moore, including... Yes, Your Honor. Could you address, and I'm not sure it's... I'm not sure it would require reversal or if it was plain error, but there's... It's disturbing that in the summation, the government said, we've only presented testimony from a small sample of his victims. Isn't that an improper argument? No, Your Honor, this was not improper and it wasn't plain error because it was an accurate statement of the evidence the jury actually found. Well, but it suggests that there are other victims, and he wasn't charged with other victims, so why does the government get to argue that we've... We only put on evidence about a few of them? Well, that's exactly the point, Your Honor. We did put on evidence of other victims. The jury saw evidence, including the videos of defendant pressuring non testifying victims... So you think you're relying on the word testimony there as opposed to evidence. The government said, we only presented testimony from a small sample. Heard testimony. Yes, Your Honor, that was the statement... That was accurate, but they presented evidence, in your view, about more victims. Correct, Your Honor. Heard testimony from just a small sample of the victims. So this was an accurate statement of the evidence because the jury saw evidence of non testifying victims, including Markelius Jefferson, who was told to do another hit of methamphetamine, a video where another unidentified victim tells defendant, I don't know if I can do more, a text message where someone asks, what happened to me when I was drugged and tied up? Defendant says, a picture is worth a thousand words. That's at SCR 397. This referenced a testimony from a small sample of some of the defendant's victims. Did it come up on rebuttal, the government's rebuttal? No, Your Honor. Or opening closing? This was in the opening closing. And no objection was made? No objection was made. That's correct, Your Honor. And again, it was not an invitation to speculate because this was very much steeped in the evidence. And as the Henderson case holds, the government is permitted to strike hard blows when it is a reasonable inference from the evidence. I see my time has expired. If the court does not have any other questions... It's a tricky count up on our clock. Do you have anything else? No, I don't. Thank you, counsel, for your argument. With regard to Barraza, what's important to understand is that with regard to the first declaration, which was authored on December 4th of 2020, that was 1,227 days after the event where Detective... But the judge believed her. I understand. And so are you saying that no reasonable judge anywhere could believe her? I mean, because that's what... That's your burden. Your burden is to say that no reasonable judge could believe her. What I'm saying is that the credibility of Detective Barraza is severely at issue based upon when the police reports were written. I assume it's at issue, and I assume you had lots of reasons and good fodder for cross examination, but the judge concluded that she was telling the truth. And I understand that. So don't you have to demonstrate to us that no reasonable judge could reach that conclusion? Well, Judge, having mentioned the fact that there should have been cross examination and confrontation with regard to these issues, we were precluded from doing that. And so... Not at the suppression hearing. Not at the suppression hearing, but certainly during the course of the trial. Issues with regard to the timeliness, the fact that there were no contemporaneous police reports written with regard to Plainview, the fact that there were no photographs taken by Detective Barraza with regard to these items allegedly being found in Plainview, the fact that there was a July 17th, 2018 supplemental report in which there's nothing reported by Barraza with regard to anything other than methamphetamine. Later on, she says, much later on, she says, Oh, by the way, I found a pipe and I found small plastic baggies. Before, she said she found just one plastic baggie. There is a lot of information that should have come to the attention of the jury during the course of cross examination. Was there a subsequent warrant? There was not. With regard to the... To the apartment. No. With regard to the Moore situation, they should have gotten a warrant. They did not. With regard to the Dean situation, they did seek a warrant for looking through the apartment. Okay. And now, so if there was a warrant with subsequent to the Barraza? There was not. There was not. And that is, we're talking about count one, where Barraza allegedly found the drugs in Plainview in the tool chest. So there was a warrant for search of the apartment prior to Barraza's entry? There was not. Okay. But didn't you tell me there was a warrant issued? I said, with regard to the Timothy Dean scenario in count two. Okay. Anyway, so my question is, since there was eventually a warrant issued for the apartment, why wouldn't these... Why wouldn't what was in the tool chest been inevitably discovered? I think we're still not in agreement here. With regard to count one, which is the Jamel Moore count, which is the toolbox count, there was not a warrant requested or issued. I understand that. I understand that. There was a warrant, however, with respect to the other count, to the Dean. Correct. And there was a search of the apartment. Correct. Wouldn't the search of the apartment inevitably have revealed what was in the toolbox? It would have inevitably revealed what was there. And so again, the issue becomes the credibility... There's no doubt that these drugs were there. They were there. So why doesn't the inevitable discovery doctrine apply here? Well, it doesn't apply because there was no criminality which was being alleged as to Mr. Moore. If you look at the various reports, as well as the coroner's reports, these reports indicate that these were not suspicious circumstances, that the death was based upon drug use but not criminality. Okay. Thank you. All right. Thank you very much, counsel. Thank you. I'm both sides for your argument. The matter is submitted.
judges: PAEZ, NGUYEN, HURWITZ